33 F.3d 55
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Nelda ENRIQUES, Defendant-Appellant.
 No. 93-5304.
 United States Court of Appeals, Sixth Circuit.
 Aug. 23, 1994.
 
 Before: MERRITT, Chief Judge, and NELSON and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from a conviction and sentence in a cocaine distribution case. The defendant urges us to reverse her conviction because of alleged violations of the Speedy Trial Act and the Jencks Act, allegedly prejudicial comments by the trial judge, and various alleged evidentiary errors. She challenges her sentence on the basis of an alleged misapplication of the sentencing guidelines.
 
 
 2
 After hearing oral argument, we remanded the Speedy Trial Act issue. The district court held a hearing and subsequently entered an order and memorandum resolving the issue in favor of the government. The parties have now favored us with supplemental briefs on the Speedy Trial Act question, and the case is ripe for decision. For the reasons that follow, we shall affirm both the conviction and the sentence.
 
 I.
 
 3
 Early in June of 1992, acting on a tip that a cocaine delivery was about to occur in Crossville, Tennessee, FBI Special Agent Clyde Merryman began investigating the activities of the suspected buyer, Billy Garrett, Jr. On June 9, 1992, Agent Merryman observed a meeting between Mr. Garrett and his drug suppliers, Christopher Kennedy and Wade Gilbert, both of Houston, Texas. Merryman and several other agents confronted the group at this time.
 
 
 4
 After telling Mr. Garrett of the informant's tip, Agent Merryman advised him of his Miranda rights and asked if he were willing to cooperate in the ongoing investigation. Mr. Garrett decided to cooperate with the agents, as did Kennedy and Gilbert. When asked if there were any money in his vehicle, Mr. Kennedy helped agents recover $5000 in cash from his pickup truck. Approximately half a kilogram of cocaine was recovered from Mr. Garrett's pickup truck.
 
 
 5
 Kennedy and Gilbert signed confessions stating that the cocaine had been supplied in Texas by men named "Tommy" and "Andy." These individuals were later identified as Thomas Thompkins and Harris Andy Dadinis. Kennedy and Gilbert were formally arrested on June 12, 1992, and were released on their own recognizance with instructions to return to Houston to assist the FBI there. They were subsequently indicted in the Middle District of Tennessee.
 
 
 6
 In the course of the Houston investigation, which was coordinated by FBI Special Agent Jennifer Brown, both Kennedy and Gilbert voluntarily engaged in tape-recorded telephone conversations with targets of the investigation. Through these tape recordings, the FBI was able to confirm that the cocaine seized in Tennessee came from Thomas Thompkins and Andy Dadinis. Thompkins and Dadinis were arrested in Houston on June 30, 1992.
 
 
 7
 Through Thompkins, police learned that Dadinis had obtained the cocaine from a person named "Nelda." Dadinis identified this person as Nelda Enriques, the defendant herein, and Dadinis agreed to participate in monitored telephone conversations with her. He also wore a hidden recorder at meetings with Ms. Enriques in her residence in Houston.
 
 
 8
 Based upon the information gathered in its investigation, the government sought to have Nelda Enriques added to the indictment. Special Agent Brown obtained an arrest warrant and a search warrant for Ms. Enriques' house, and on July 16, 1992, agents went to her house, arrested her, advised her of her Miranda rights, and searched the premises. There they found a total of 9.9 pounds (4.5 kilograms) of cocaine and 48.54 pounds of marijuana. They also recovered a semi-automatic handgun, a digital beeper, scales used for weighing drugs, and records containing evidence of drug transactions.
 
 
 9
 Ms. Enriques was taken to the FBI office to be booked and fingerprinted. On the way to the office she initiated a discussion of the case with Agent Brown. Agent Brown advised her of her Miranda rights again once they had reached the office. Ms. Enriques said that she understood her rights, and she signed an advice-of-rights form in which she acknowledged that her subsequent statements would be made voluntarily. After signing the form Ms. Enriques admitted to Agent Brown that she had sold the cocaine that was eventually transported to Tennessee.
 
 
 10
 In due course Ms. Enriques was added to the indictment in the Middle District of Tennessee. The charges against her were (1) conspiracy to distribute cocaine and (2) aiding and abetting her co-defendants' possession of cocaine with intent to distribute it, in violation of 21 U.S.C. Secs. 846 and 841(a)(1), respectively. On August 28, 1992, she entered a plea of not guilty. Her trial--which was eventually severed from the trial of her co-defendants--began on December 2, 1992. Two weeks before the start of the trial Ms. Enriques moved for acquittal on Speedy Trial Act grounds. The court denied the motion, stating that the trial could properly be delayed due to the joinder of a co-defendant.
 
 
 11
 At trial the government introduced all of the tape-recorded conversations, much of the evidence seized in the search of Ms. Enriques' house, and pictures of Mr. Dadinis entering and leaving the house. Mr. Dadinis failed to appear as a witness, although called to do so, whereupon his bond was forfeited and a bench warrant was issued for his arrest. The court told the jury of Mr. Dadinis' non-appearance and gave several limiting instructions regarding the uses to which the jury might put his tape-recorded statements.
 
 
 12
 The jury found Ms. Enriques guilty of both of the charges against her. She was sentenced to imprisonment for 235 months, to be followed by five years of supervised release, and she was fined $20,000. Ms. Enriques then filed a timely appeal.
 
 II.
 A. The Speedy Trial Act
 
 13
 The defendant contends that her conviction is invalid because her trial did not begin within 70 days of August 21, 1992, the date of her first court appearance in Tennessee, as required by 18 U.S.C. Sec. 3161(c).[1] It is undisputed that the defendant's trial did not begin within the 70-day period. The district court granted an extension, however, pointing out that 18 U.S.C. Sec. 3161(h)(7) permits this in the event of delay caused by the joinder of a co-defendant for whom the speedy trial period has not yet run. This section provides, in relevant part:
 
 
 14
 "(h) The following periods of delay shall be excluded ... in computing the time within which the trial of any such offense must commence:
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 (7) A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted."
 
 
 18
 Pressed by the defense to specify the grounds for the extension, the district court declined to do so and did not identify the particular co-defendant in question. On remand, however, the district court indicated that the period prior to September 29, 1992, had been excluded due to the joinder of co-defendant Tommy Thompkins.
 
 
 19
 Although co-defendant Thompkins was arrested in Houston on June 30, 1992, it was September 29, 1992, when he first appeared before a judicial officer in the Tennessee district court. Under 18 U.S.C. Sec. 3161(c), Thompkins' speedy trial time (and thus the defendant's time) presumably began to run following the latter event.
 
 
 20
 Noting that the term "delay" in paragraph 3161(h)(7) is qualified by the adjective "reasonable," Ms. Enriques argues that the delay in bringing Mr. Thompkins before the court in Tennessee was unreasonable and that her speedy trial clock began to run before Thompkins appeared in Tennessee. In this connection she cites subparagraph 3161(h)(1)(H), which provides that "delay resulting from transportation of any defendant from another district" will be excluded from the time between that defendant's indictment and trial, but that "any time consumed in excess of ten days from the date [of] an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable."
 
 
 21
 As the district court observed, the delay in transporting Mr. Thompkins was not unreasonable under the circumstances. Mr. Thompkins apparently consented to removal at his detention/removal hearing in the District Court for the Southern District of Texas on July 6, 1992, and that court ordered that Thompkins be detained until trial. The court further ordered, it appears, that Mr. Thompkins be removed to the Eastern District of Texas for the processing of other charges against him prior to his removal to Tennessee. There is no indication in the record that the time spent in processing the charges in the Eastern District of Texas was unreasonable, and the statutory presumption does not apply to such activities. We conclude, therefore, that the district court's denial of Ms. Enriques' motion to dismiss was not erroneous.[2]
 
 
 22
 The defendant also points to the district court's failure to make an express finding, pursuant to 18 U.S.C. Sec. 3161(h)(8)(A), that the ends of justice served by delay outweighed the interests of the public and the defendant in a speedy trial. This subsection provides, in relevant part, that the district court may exclude
 
 
 23
 "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for [so finding]." (Emphasis supplied.)
 
 
 24
 It is clear from the record, however, that the judge did not purport to extend the time pursuant to subparagraph 3161(h)(8)(A). The exclusion of time for the joinder of a co-defendant pursuant to paragraph 3161(h)(7) is not a "continuance," and it does not require a subparagraph (h)(8)(A) finding.
 
 B. Prejudice Issues
 
 25
 Ms. Enriques alleges that certain actions and statements by the trial court warrant reversal because they tended to "cast[ ] the government's lawyer in the role of the 'underdog.' " She contends that the court interfered with the defense's cross-examination of witnesses and that the court regularly assumed the role of the prosecutor by interrogating witnesses. In so doing, says the defendant, the trial judge communicated to the jury that he favored a conviction.
 
 
 26
 Conceding that the district court was "strict" in managing the trial, the government maintains that the record as a whole reflects an orderly trial in which the court sought to ensure that "issues [were] not obscured and that the testimony [was] not misunderstood." See United States v. Slone, 833 F.2d 595, 597 (6th Cir.1987). The government also notes that the trial judge is permitted to question witnesses for the purpose of eliciting the truth. Id.
 
 
 27
 The transcript of the trial reveals no serious transgression by the trial court, in our view; the court was simply trying to keep extraneous matters out of a complex trial and to encourage the orderly introduction of evidence.
 
 
 28
 The defendant also complains that she suffered prejudice because two jurors saw her in handcuffs while she was being transported from the jail to the courtroom. The incident occurred in the courthouse, but not in the courtroom itself. Defense counsel declined an opportunity to make inquiry of the jurors regarding the incident and did not request that a limiting instruction be given to the jury, so we review for plain error only. Cf. United States v. Busacca, 863 F.2d 433, 435 (6th Cir.1988), cert. denied, 490 U.S. 1005 (1989); United States v. Causey, 834 F.2d 1277, 1283 (6th Cir.1987), cert. denied, 486 U.S. 1034 (1988). A plain error is defined as "an egregious error, one that directly leads to a miscarriage of justice." Busacca, 863 F.2d at 435.
 
 
 29
 This court has observed that incidents in which jurors view shackled criminal defendants for brief periods outside of the courtroom are less prejudicial than similar incidents occurring in the courtroom during trial. See United States v. Barger, 931 F.2d 359, 371 (6th Cir.1991); United States v. Crane, 499 F.2d 1385, 1389 (6th Cir.), cert. denied, 419 U.S. 1002 (1974). Here the incident was a brief one and did not involve the entire jury. We think it most unlikely that any miscarriage of justice occurred.
 
 C. Evidentiary Rulings
 
 30
 FBI Case Agent Brown testified, without leading by the prosecutor and without objection from the defendant, that Ms. Enriques had admitted certain aspects of her involvement in the cocaine transaction. The prosecutor followed up with more specific questions, each of which was posed in the context of Agent Brown's testimony that Ms. Enriques had confessed her involvement in the cocaine deal.
 
 
 31
 The defendant first argues that her statements should have been excluded as inadmissible hearsay. But Rule 801(d)(2), Fed.R.Evid., creates an exception to the hearsay rule for admissions of a party-opponent. The testimony as to what Ms. Enriques said during her interview was clearly admissible under this exception.
 
 
 32
 Second, the defendant objects to the testimony on the ground that it was evoked by leading questions. The trial court had discretion to permit a certain amount of leading, however, and we see no abuse of that discretion here. See Chonich v. Wayne County Community College, 874 F.2d 359, 368 (6th Cir.1989); United States v. Shoupe, 548 F.2d 636, 641 (6th Cir.1977).
 
 
 33
 Ms. Enriques also objects to the introduction of tape-recorded conversations between the defendant and the missing co-conspirator, Andy Dadinis. The district court permitted the tapes to be played, over the defendant's objection, but gave a limiting instruction in which the jury was told that it could consider the statements of Mr. Dadinis only for the purpose of putting Ms. Enriques' statements in context.
 
 
 34
 As long as tape recordings are authentic and reliable, the decision to admit them into evidence rests in the sound discretion of the trial court. See United States v. Robinson, 707 F.2d 872, 876 (6th Cir.1983). Here the defendant contends that the tapes did not meet the authentication and reliability criteria set forth in United States v. McMillan, 508 F.2d 101, 104 (8th Cir.1974), cert. denied, 421 U.S. 916 (1975). McMillan held that admission of a tape recording is admissible when (1) the recording device was capable of accurately recording the conversation; (2) the operator of the device was competent to operate it; (3) the recording is authentic and correct; (4) changes, additions, or deletions have not been made; (5) the recording has been preserved in a manner shown to the court; (6) the speakers are identified; and (7) the conversation elicited was made voluntarily, in good faith, and without any kind of inducement. Id.
 
 
 35
 Based upon the testimony of the agent who had monitored Andy Dadinis, the district court concluded that the McMillan criteria were met. The defendant gives primary attention to the seventh element of the test, arguing that the recording was not voluntary because Mr. Dadinis only agreed to do it in the expectation that he would receive more lenient treatment from the government. We do not see why the motives of Mr. Dadinis should matter, however, as long as the defendant's side of the conversation was voluntary. In any event, there is no indication here that Dadinis was pressured or threatened if he did not cooperate. The admission of the tapes did not constitute reversible error.
 
 
 36
 The defendant also argues that she was denied any opportunity to cross-examine Mr. Dadinis and her Sixth Amendment right to confront the witnesses against her was thus violated. This contention is also without merit. The district court explicitly charged the jury not to take Dadinis' statements as true and to consider them only for the purpose of placing Ms. Enriques' statements in context. Because Mr. Dadinis' statements were not offered for the truth thereof, there is no hearsay or confrontation problem. See United States v. Hathaway, 798 F.2d 902, 904-05 (6th Cir.1986).
 
 
 37
 The defendant further argues that the court erred in admitting testimony by co-defendant Tommy Thompkins that Mr. Dadinis had mentioned "Nelda" as his source and said that she was owed $17,500 for cocaine. The defendant argues that this was error because the statement was not made in furtherance of the conspiracy and therefore does not meet the hearsay exception of Rule 801(d)(2)(E), Fed.R.Evid.[3] This contention likewise lacks merit. The statement, which came within the time frame of the conspiracy, was made to apprise Thompkins of the identity of the source and the credit arrangement that existed with her. This was in furtherance of the conspiracy, so the co-conspirator statement exception to the hearsay rule applies.
 
 D. Validity of the Search Warrant
 
 38
 The defendant argues that the drugs seized in the search of her house should have been suppressed because the search warrant did not list drugs among the items to be seized. The government responds that omission of the term "contraband" or the like was simply a "typographical error." Be that as it may, we believe that the district court's ruling can be upheld on other grounds.
 
 
 39
 The contraband seized in this case came within the plain view doctrine since it was immediately visible during the legal search of Ms. Enriques' house and its incriminating character was apparent to the agents. See Arizona v. Hicks, 480 U.S. 321, 326-27 (1987). The search would not have been conducted any differently had the police included "contraband" among the items to be seized. See Horton v. California, 496 U.S. 128, 139 (1990).
 
 
 40
 In Horton, a police officer investigating an armed robbery concluded that there was probable cause to believe that the proceeds of the robbery were contained in a suspect's residence. Although the officer's affidavit made mention of weapons and proceeds of the robbery, the warrant authorized search only for the proceeds. The search of the residence did not turn up any proceeds, but several guns and other evidence corroborating the statements of witnesses to the crime were found in plain view. The Supreme Court held that the evidence was properly seized because, according to the Court, the discovery of "plain view" evidence does not have to be "inadvertent" to qualify for the exception. Id. at 141-42.
 
 
 41
 The fact that the agents might have guessed (or hoped) that they would find contraband in Ms. Enriques' home during their search for collateral evidence does not render the seizure improper. As long as the contraband was in "plain view" during a legal, reasonable search, and as long as the criminal character of the evidence was immediately apparent, the seizure was proper. The fact that some of the cocaine was found in a box inside a chest of drawers is of no consequence, since it was reasonable to search the drawer for items that were listed on the warrant.
 
 E. Rule 404(b)
 
 42
 Ms. Enriques contends that the court erred in admitting the evidence seized pursuant to the search of her house because it was introduced only to demonstrate her bad character and to show conformity with such character. She further argues that the judge simply admitted the evidence based upon a "laundry list" of exceptions in Rule 404(b), Fed.R.Evid.
 
 
 43
 Rule 404(b) forbids the introduction of "[e]vidence of other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith." The rule goes on to provide that such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." Huddleston v. United States, 485 U.S. 681, 686 (1988). Once the court determines that the evidence is admissible for a proper purpose, the court must decide whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Rule 403, Fed.R.Evid.; United States v. Blankenship, 775 F.2d 735, 739 (6th Cir.1985).
 
 
 44
 Ms. Enriques contends that the government did not adequately set forth any permissible purpose for the evidence. The government did, however, offer fairly detailed reasons as to why the evidence might be probative of relevant matters other than character. According to the prosecutor, the evidence would be admissible to show:
 
 
 45
 "Opportunity ... could the defendant have done what the government says she did? Preparation ... there is a preparation issue in this case, because ... the evidence goes toward the fact that when the young men, the couriers in Tennessee, ... were sent back to determine, and they did determine ... who had prepared the cocaine or the white powder that was later apprehended in Tennessee.... Plan, in a conspiracy case, planning is often important, and the jurors will want to know ... whether or not Ms. Enriquez (sic) could have been part of the plan to get the dope from Texas to Tennessee, and of course ... modus operandi, method of operating, is often at issue in these kinds of cases, because one wants to see whether or not this defendant did things in the manner of the government's proof ... [i.e.,] many phone calls, ... a fronting, that is a putting out of the white powder on a credit basis with cash to come back later."
 
 
 46
 This adequately demonstrates that the evidence was probative of material issues than character.
 
 
 47
 The district court gave more than one limiting instruction reminding the jury that Ms. Enriques was not on trial for possession of the cocaine or marijuana found at her house and that the evidence should be considered for the limited purpose "of showing the modus operandi, the way she operated generally." The court then added that the evidence was "admissible for showing ... motive, opportunity, intent, preparation, knowledge and absence of mistake and accident." In light of these limiting instructions, we do not believe that the evidence had an unduly prejudicial impact on the jury.
 
 
 48
 F. Jencks Act Violations/Identity of Informant
 
 
 49
 The defendant also complains that the district court erred in refusing to allow her access to a sealed FBI file maintained by Special Agent Merryman. Following an in camera review conducted pursuant to the Jencks Act, 18 U.S.C. Sec. 3500, the court ordered the government to produce portions of the file; Ms. Enriques suggests that the remaining materials may have been withheld improperly.
 
 
 50
 We have reviewed the materials in question, and we are satisfied that they do not raise any flags with respect to the testimony of the government's witnesses; any error in withholding the materials was harmless.
 
 
 51
 Ms. Enriques also claims that the court erred in refusing to order the government to reveal the identity of an informant who was involved in drug negotiations with her co-defendants. The opportunity to question the informant at trial might have aided her defense, she says, because the informant's testimony could have contradicted the testimony of Agent Merryman or one or more of the co-defendants.
 
 
 52
 In deciding whether the government should be required to reveal the identity of an informant, the courts must balance the government's interest in protecting the flow of information against the defendant's right to prepare her defense. Roviaro v. United States, 353 U.S. 53, 62 (1957). The court may consider such factors as the crime charged, possible defenses to the crime, the potential significance of the informant's testimony, and the safety of the informant. Id.
 
 
 53
 The party seeking disclosure bears the burden of showing that the informant's testimony would provide substantial assistance to the defense. United States v. Diaz, 655 F.2d 580, 588 (5th Cir. Unit B Sept. 1981), cert. denied, 455 U.S. 910 (1982). This court reviews the district court's ruling on such a question "only to determine whether there was an abuse of discretion that resulted in substantial prejudice" to the defendant. United States v. Straughter, 950 F.2d 1223, 1232 (6th Cir.1991), cert. denied, 112 S.Ct. 1505 (1992). See also United States v. Sims, 975 F.2d 1225, 1238-39 (6th Cir.1992), cert. denied, 113 S.Ct. 1617 (1993), where we held that the district court did not abuse its discretion in denying disclosure of an informant's identity when the informant merely served to identify the defendant for an undercover agent.
 
 
 54
 Having reviewed the FBI file in camera, we are satisfied that the "unidentified informant" merely provided Agent Merryman with a tip as to the sale of cocaine to co-defendant Garrett. This information related to a person who was relatively low in the chain of distribution, and the informant's testimony would not have been of any material help to Ms. Enriques.
 
 III.
 
 55
 Ms. Enriques challenges her sentence on several grounds. First, she argues that certain quantities of cocaine not included in the indictment were used impermissibly in the calculation of her offense level under the sentencing guidelines. The commentary to the guidelines says that "[c]onduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." U.S.S.G. Sec. 1B1.3, comment. (backg'd). The commentary also says expressly that quantities of drugs not included in the conviction may be sometimes considered in sentencing:
 
 
 56
 "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. Sec. 1B1.3, comment. (backg'd).
 
 
 57
 As an example, the application notes to the guidelines state that
 
 
 58
 "where the defendant engaged in three drug sales of 10, 15, and 20 grams of cocaine, as part of the same course of conduct or common scheme or plan, subsection (a)(2) [of Sec. 1B1.3] provides that the total quantity of cocaine involved (45 grams) is to be used to determine the offense level even if the defendant is convicted of a single count charging only one of the sales." U.S.S.G. Sec. 1B1.3, comment. n. 3.
 
 
 59
 It is clear, therefore, that the guidelines gave the district court authority to consider quantities of cocaine not included in the charge against Ms. Enriques, provided that the cocaine was the subject of a common scheme or plan or part of the same course of conduct with which she was charged. The district court concluded that the cocaine seized from her house met this requirement.
 
 
 60
 This court has held that "facts used for sentencing must have some minimum indicia of reliability beyond mere allegation. In addition, [the Sixth Circuit] has required that proof presented at sentencing hearings satisfy a preponderance of the evidence standard." See United States v. Gibson, 985 F.2d 860, 863 (6th Cir.) (internal quotes and citations omitted), cert. denied, 113 S.Ct. 2981 (1993). This court reviews the district court's factual conclusions under a clearly erroneous standard. Id.
 
 
 61
 There was substantial evidence linking Ms. Enriques to the cocaine in question and relating the cocaine to the sort of scheme with which she was charged. The contraband was found in her house, along with records and equipment tending to show that Ms. Enriques dealt in substantial quantities of cocaine. In light of the overwhelming evidence connecting Ms. Enriques to the drugs in question, as well as the evidence that the cocaine was part of a common distribution scheme, we conclude that the court did not err in aggregating the quantities of cocaine for sentencing purposes.
 
 
 62
 Ms. Enriques also asserts error in the district court's failure to hold an evidentiary hearing before concluding that she was "the organizer and leader of the cocaine distribution activity that at least involved herself and five co-defendants." She relies on United States v. Bluske, 969 F.2d 609 (8th Cir.1992), where the Eighth Circuit reversed a sentence because the district court had relied on the presentence report without any other fact-finding.
 
 
 63
 The sentencing hearing in the case at bar was an extensive one, however, and the parties were given a full opportunity to argue this issue. Substantial evidence had been presented at trial to show that Ms. Enriques was a leader in the conspiracy. The record on which the district court relied was more than adequate to permit it to arrive at the conclusion it did.
 
 
 64
 Ms. Enriques also argues--for the first time in her reply brief on appeal--that the fine imposed by the district court was impermissible because it purported to compensate the government for the costs of her incarceration. Because no specific objection to the assessment of a fine under U.S.S.G. Sec. 5E1.2(i) was made in the district court, and because the issue was not timely raised on appeal, we decline to address the merits of this contention.
 
 
 65
 AFFIRMED.
 
 
 
 [1]
 Section 3161(c)(1) provides, in pertinent part, as follows:
 "In any case in which a plea of not guilty is entered, the trial of a defendant charged in an ... indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the ... indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."
 
 
 [2]
 The district court's primary ground for rejecting Ms. Enriques' argument was that the exception clause of Sec. 3161(h)(1)(H) did not apply because the delay in transporting Thompkins, even if unreasonable, occurred before Thompkins' first appearance. We need not decide the validity of this rationale. Neither do we find it necessary to address the merits of an alternative analysis that was offered by the government in its supplemental brief on the speedy trial issue
 
 
 [3]
 "A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."