**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Berton SLONE, Defendant-Appellant.**

No. 87–5299.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 28, 1987.

Decided Nov. 16, 1987.

Garis L. Pruitt (argued), C. David Mussetter, Catlettsburg, Ky., for defendant-appellant.

Louis DeFalaise, U.S. Atty., Charles Dause (argued), Lexington, Ky., for plaintiff-appellee.

Before MARTIN and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Burton Slone appeals from his conviction on six counts of drug and alcohol related charges. For the following reasons, we affirm the district court's judgment.

## I.

On October 30, 1986, the federal grand jury for the Eastern District of Kentucky in Ashland indicted Berton Slone and co-defendant Joseph Cox. The indictment returned and filed charged each defendant with three counts of conspiracy relating to, and cultivating marijuana and three counts of conspiracy relating to, and maintaining an illegal stilling apparatus.

Slone and Cox each pled not guilty to all counts against him on November 24, 1986, and trial was set for January 5, 1987. On the trial date, Cox was rearraigned. The district court granted Cox's motion to change his plea to guilty to counts two and four and not guilty to counts one, three, five, and six.

The case against Slone went to jury trial on January 5, 1987, as scheduled. The trial lasted less than two full days. Upon completion of the trial, the jury returned a verdict of guilty on all six counts.

The district court sentenced Slone on March 2, 1987, to four years each on counts one, two, and three; imprisonment on counts two and three to be served concurrent with the sentence on count one and with each other. The district court also sentenced Slone to four years each on counts four, five, and six; imprisonment on counts five and six to be served concurrent with the sentence in count four and concurrent with each other, but consecutive to the sentence imposed on count one.

Slone filed this timely appeal.

Appellant assigns error to two aspects of the district court's handling of his trial. First, during the course of the proceedings, the trial judge addressed questions and comments to witnesses Edgar Waugh, Gary Garvin, Jack Scott, Cox and appellant himself. The specific questions and comments at issue will be referred to in this opinion as needed. Second, during the course of the proceedings, Mike Spreger, a witness for the prosecution, read excerpts from appellant's grand jury testimony over his objection.

This court must determine whether the trial judge committed plain error by interjecting himself into the proceedings to the extent that he created an atmosphere in which it was impossible for appellant to receive a fair trial. This court must also determine whether the district court abused its discretion by admitting into evidence the prosecution's witness' reading of exerpts from appellant's grand jury testimony.

## II.

In reviewing this conviction, we may not reverse the jury's verdict if it is supported by substantial evidence. *United States v. Chandler*, 752 F.2d 1148, 1151 (6th Cir. 1985). Further, this court must construe the evidence in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Green*, 548 F.2d 1261, 1266 (6th Cir.1977); *Chandler*, 752 F.2d at 1151.

## A.

■ The presiding judge should conduct a trial in an orderly way with a view to eliciting the truth and to attaining justice between the parties. He must see that the issues are not obscured and that the testimony is not misunderstood. The trial court has the right to interrogate witnesses for this purpose. *United States v. Carabbia*, 381 F.2d 133, 139 (6th Cir.) (citing *Knapp v. Kinsey*, 232 F.2d 458, 466 (6th Cir.), *cert. denied*, 252 U.S. 892, 77 S.Ct. 131, 1 L.Ed. 2d 86 (1956)), *cert. denied*, 389 U.S. 1007, 88 S.Ct. 564, 19 L.Ed.2d 602 (1967); *United States v. Hickman*, 592 F.2d 931, 933 (6th Cir.1979). *See Glasser*, 315 U.S. at 82–83, 62 S.Ct. at 470.

The presiding judge, however, must be careful to " 'always be calmly judicial, dispassionate and impartial. He should sedulously avoid all appearances of advocacy as to those questions which are ultimately to be submitted to the jury.' " *Hickman*, 592 F.2d at 933 (quoting *Frantz v. United States*, 62 F.2d 737, 739 (6th Cir.1933)). " 'The basic requirement is one of impartiality in demeanor as well as in actions.' "

*Hickman*, 592 F.2d at 933 (quoting *United States v. Frazier*, 584 F.2d 790, 794 (6th Cir.1978)).

In *Hickman*, this circuit noted that while potential prejudice lurks behind every intrusion a presiding judge makes into a trial, determining when a trial judge oversteps his bounds remains difficult. *Hickman*, 592 F.2d at 933. *Hickman* identified three factors which determine whether a trial judge has good reason to interject himself into the trial. First, in a lengthy, complex trial, judicial intervention is often necessary for clarification. *Id.* (citing *United States v. Smith*, 561 F.2d 8, 13–14 (6th Cir.), *cert. denied*, 434 U.S. 958, 98 S.Ct. 487, 54 L.Ed.2d 317 (1977) and *United States v. Green*, 544 F.2d 138, 147 (3d Cir.1976), *cert. denied*, 430 U.S. 910, 97 S.Ct. 1185, 51 L.Ed.2d 588 (1977)). Second, if the attorneys in a case are unprepared or obstreperous or if the facts are becoming muddled and neither side is succeeding at attempts to clear them up, judicial intervention may be necessary for clarification. *Hickman*, 592 F.2d at 933 (citing *Frazier*, 584 F.2d at 793 and *United States v. Burch*, 471 F.2d 1314, 1317–18 (6th Cir. 1973)). Third, if a witness is difficult, if a witness' testimony is unbelievable and counsel fails to adequately probe, or if the witness becomes inadvertently confused, judicial intervention may be needed. *Hickman*, 592 F.2d at 933 (citing *Burch*, 471 F.2d at 1317–18; *United States v. Liddy*, 509 F.2d 428, 437–42 (1974), *cert. denied*, 420 U.S. 911, 95 S.Ct. 833, 42 L.Ed.2d 842 (1975); and *United States v. McColgin*, 535 F.2d 471, 474–75 (8th Cir.1975), *cert. denied*, 429 U.S. 853, 97 S.Ct. 145, 50 L.Ed.2d 128 (1976)).

■ In addition to the requirement that a presiding judge have good reason to interject himself into a trial, *Hickman* requires that the trial judge conduct himself in an appropriate manner. *Hickman* notes the importance of an objective demeanor. "Outright bias or belittling of counsel is ordinarily reversible error.... However, under some circumstances, misconduct by a trial judge may not mandate reversal." *Hickman*, 592 F.2d at 934.

Interference with the presentations of counsel potentially makes a mockery of a defendant's right to a fair trial, even in the absence of open hostility. *Id.* (citing *United States v. Hoker,* 483 F.2d 359 (5th Cir.1973); *United States v. Sheldon,* 544 F.2d 213, 216–19 (5th Cir.1976); *United States v. Fernandez,* 480 F.2d 726, 737–38 (2d Cir.1973); *United States v. Cassiagnol,* 420 F.2d 868, 879 (4th Cir.), *cert. denied,* 397 U.S. 1044, 90 S.Ct. 1364, 25 L.Ed.2d 654 (1970)). Also, interference with cross examination rights will result when a judge takes over examination by counsel. *Hickman,* 592 F.2d at 934 (citing *Cassiagnol,* 420 F.2d at 879 and *Bursten v. United States,* 395 F.2d 976, 983 (5th Cir. 1978)).

In the instant case, appellant argues that the trial judge interjected himself into the record and took over the examination of witnesses to the extent that appellant was denied his sixth amendment right to a fair and impartial trial, and was denied his fifth amendment right to protection of liberty through due process. Appellant failed, however, to object to any of the trial judge's questions or comments. In *Hickman,* this court noted the dilemma caused by requiring the defense counsel to object to the presiding judge's interruptions:

> Counsel for defendant in a criminal case, is indeed in a difficult and hazardous predicament in finding it necessary to make frequent objections in the presence of a jury to questions propounded by the trial judge. The jury is almost certain to get the idea that the judge is on the side of the Government.

*Hickman,* 592 F.2d at 936 (quoting *United States v. Hill,* 332 F.2d 105, 106–07 (7th Cir.1964)). In *Hickman,* however, this court went on to hold that the trial judge had committed plain error. *Hickman,* 592 F.2d at 936. In *Hill,* the case quoted in *Hickman,* the defendant had failed to object to only some of the court's questions which were criticized on appeal. *Hill,* 332 F.2d at 106. Because in the instant case appellant did not object to any of the trial judge's questions or comments nor did he argue that to do so would have exacerbated the situation, this court will not reverse the trial court unless the trial judge committed plain error. *See also United States v. Smith,* 561 F.2d 8, 13 (6th Cir.1977) (where no contemporaneous objections to the trial court's active participation were made, plain error standard applied). The plain error doctrine mandates reversal " 'only in exceptional circumstances' and only where the error is so plain that 'the trial judge and prosecutor were derelict in countenancing it.' " *United States v. Mendez–Ortiz,* 810 F.2d 76, 78 (6th Cir.1986) (quoting *United States v. Hook,* 781 F.2d 1166, 1172 (6th Cir.) (quoting *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)), *cert. denied,* — U.S. —, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986)), *cert. denied,* — U.S. —, 107 S.Ct. 1384, 94 L.Ed.2d 697 (1987).

Appellant argues that the trial judge's questioning of three witnesses for the prosecution's case in chief was impermissible. First, after defense counsel finished cross-examination of Edgar Waugh, the manager of Stamper's grocery where Slone and Cox allegedly purchased large quantities of sugar for alcohol production, the prosecution offered no redirect. The trial judge then asked eleven questions which appellant argues had a prosecutorial effect:

THE COURT: Is—Let's see; this is Peachie Stamper's store over at Olive Hill?

WITNESS: Yeah.

THE COURT: Are you all cash and carry, or jot it down?

WITNESS: We still charge, have a big credit.

THE COURT: What would 600 pounds of sugar cost?

WITNESS: Let's see—

THE COURT: Did Peachie give him a break on the price?

WITNESS: No. You don't make enough on sugar; it's not worth it.

THE COURT: What would 600 pounds of sugar cost?

WITNESS: Well, that's what I'm trying to say; I think $20 a bale, something like that.

THE COURT: What would 600 pounds be? How many pounds in a bale?

WITNESS: 60–pound bales.

THE COURT: That would be ten bales.

WITNESS: Okay.

THE COURT: What would a bale cost?

WITNESS: $20, $22, somewhere around there; it varied.

THE COURT: It would be a couple hundred dollars?

WITNESS: It varied. How much?

THE COURT: It would be a couple hundred dollars for 600 pounds.

WITNESS: Yeah.

THE COURT: How often would the Defendants pick up 600 pounds of sugar?

WITNESS: Well, it may go five or six weeks, something like that; maybe, more or less.

THE COURT: All right; that's all I have. Anyone else have any more questions?

MR. REEVES: Yes

FURTHER CROSS–EXAMINATION BY MR. REEVES:

Q. You said that you have some customers that would pick up maybe two or three bales; is that right?

A. Well, that's during canning season, you know, it's not—

Q. That would be—

A. It's not odd for somebody to get it that way.

Q. That would be 120 or 180 pounds.

A. Well, two or three bundles, ever what that—that would be 120 or 180 pounds; you're right.

Q. This would cost $40 or $60.

A. Yeah; maybe more.

MR. REEVES: No further questions.

THE COURT: All right. Any Redirect?

MR. DAUSE: Only one.

#### REDIRECT EXAMINATION

BY MR. DAUSE:

Q. You would call 600 pounds unusual. You would call 600 pounds unusual?

A. Yeah; I would.

MR. DAUSE: That's all, Your Honor.

THE COURT: All right. Anything further? Any objection to Mr. Waugh being finally excused?

MR. DAUSE: No, Your Honor.

THE COURT: All right, Mr. Waugh, you will be happy to know that you are finally excused as a witness in this case.

WITNESS: Thank you.

Appellant attaches particular significance to the trial judge's question regarding the frequency of Slone and Cox's sugar purchases since according to appellant the prosecution did not ask Waugh how often Slone and Cox purchased sugar at Stamper's. Appellant argues that the trial judge was attempting to affirm the prosecution's proof that Slone had to be a moonshiner because he allegedly purchased large amounts of sugar from Stamper's.

Second, appellant argues that the trial judge took over cross-examination of Gary Garvin, an employee of Steven's Farm Supply, Inc. where Slone allegedly purchased large quantities of cracked corn for alcohol production and ammonia nitrate to fertilize marijuana. Garvin had testified on direct that on July 22, 1986, he sold Slone 1350 pounds of ammonia nitrate and large quantities of cracked corn. Garvin further testified that cracked corn was never used as a horse feed, and that there was no use for ammonia nitrate on tobacco during summer. Following cross-examination, the judge asked Garvin whether he knew how many pounds of ammonia nitrate per acre of tobacco a farmer would buy and whether he ever helped tobacco farmers calculate their ammonia nitrate requirements. Garvin simply answered, "no" to both questions, and the questioning was finished.

Third, appellant argues that the trial judge took over the cross-examination of Jack Scott, a neighbor of Slone. Scott had testified that Slone hung tobacco at Scott's barn. At the end of cross-examination of Scott, the trial judge asked Scott how much of a tobacco base Slone had. Scott replied, "I don't know," and the questioning was finished. Appellant argues that the trial judge was advocating the prosecution's attempt to prove that Slone was really a marijuana farmer, not a tobacco farmer.

Appellant argues that the trial judge not only effectuated the prosecution's case in chief, it damaged appellant's case by taking

over the examination of defense witnesses as well.

First, appellant argues that the trial judge took over the examination of co-defendant Cox. Cox had testified on cross-examination that he moved the still into the wood building where it was found using a motor dolly. The prosecutor asked if Cox was aware that the state police had to rip a wall out of the house to get the still out. The trial judge then commented, "you moved it in in one piece" and "they took it out in one piece," and Cox answered, "Yeah." Appellant argues that the trial judge was attacking Cox's credibility and improperly advocating the prosecution's impeachment of Cox.

Second, appellant argues that the trial judge curtailed cross-examination of Slone. A large part of appellant's case consisted of attempting to prove that someone named Country Boy was co-defendant Cox's accomplice. The existence and identity of Country Boy remains a mystery. On cross-examination, Slone testified that Country Boy had told Slone that he was Slone's nephew and that he was from Indiana. Slone testified that he drove to Indiana in search of Country Boy's identity. Slone also testified that he asked Country Boy about his true identity many times. Slone was attempting to further explain his investigation of Country Boy's identity when the trial judge said, "we have spent enough time on that" and "let's move on to something else." Appellant argues that the trial judge's comment was a thinly veiled intimation of disbelief which allowed the jury to infer that Slone was not worthy of belief and that Country Boy was a fictional character concocted by Slone and Cox in order to exculpate Slone.

■ Applying *Hickman*, this court must initially determine whether the trial judge had good reason to interject himself into the trial at the instances noted. Since this was not a lengthy or complex trial, *Hickman's* first factor does not apply. The trial judge's questions, however, do conform to *Hickman's* second factor since they constitute attempts at clarification. For example, on direct examination of Waugh the transcript contains the following questioning:

Q. How many occasions are you aware of that Bert Slone came to get the sugar?

A. Gosh, I don't know.

Q. More than once?

A. Yeah; I'm sure.

Q. Several times?

A. Several times, maybe.

Q. Were there any occasions when you observed both Bert Slone and Joe Cox there together getting the sugar?

A. Yeah.

Then, after cross-examination the trial judge asked, "how often would the Defendants pick up 600 pounds of sugar?" Waugh responded, "[w]ell, it may go five or six weeks...." While appellant is correct in noting that the prosecution did not ask Waugh the cost of the sugar on direct examination, the trial judge's questions about price do clarify the point that defendants were buying a lot of sugar.

Additionally, the record indicates that the trial judge did not interfere with appellant's cross-examination rights since in each instance the trial judge waited until cross-examination was completed before he asked a question of the witness. Also, appellant's attorney was allowed further cross-examination after the judge's questioning of Waugh. The fact that testimony elicited by the trial judge may have damaged appellant's case, does not automatically cast the court in the improper role of surrogate prosecutor. *Smith*, 561 F.2d at 14.

■ With respect to the curtailment of cross-examination of appellant, the judge has wide discretionary control. *See* E. Cleary, *McCormick on Evidence* § 20 (3d ed. 1984); *Glasser*, 315 U.S. at 83, 62 S.Ct. at 470. " 'Cross-examination of a witness is a matter of right,' " and the cross-examiner must be given " 'reasonable latitude' " in developing facts tending to show that the testimony in chief was untrue or biased. *United States v. Touchstone*, 726 F.2d 1116, 1122 (6th Cir.) (quoting *Alford v. United States*, 282 U.S. 687, 691–92, 51

S.Ct. 218, 219–20, 75 L.Ed. 624 (1931)), *reh'g and reh'g en banc denied,* 726 F.2d 1116 (1984). However, since the extent of cross-examination is within the trial judge's sound discretion, the judge may reasonably determine when a subject is exhausted. *Touchstone,* 726 F.2d at 1122 (citing *Alford v. United States,* 282 U.S. at 694, 51 S.Ct. at 220). Because the trial judge did not deny cross-examination altogether nor did he arbitrarily curtail cross-examination upon a proper subject, but instead merely prevented appellant from belaboring his point, the trial judge did not abuse his discretion.

■ The final concern on this issue is the trial judge's comment to co-defendant Cox that "you moved it in in one piece" and "they took it out in one piece." This comment was probably unnecessary and imprudent, but it does not constitute plain error which requires reversal. Construed in the light most favorable to the government, *see Glasser,* 315 U.S. at 80, 62 S.Ct. at 469, this comment is merely an observation by the trial judge.

■ The conclusion that the trial judge's questions and comments do not constitute plain error is strengthened by his instructions to the jury:

Also, during the course of a trial I have occasionally made comments to the lawyers, asked questions of a witness, or maybe admonished a witness concerning the manner in which he should respond to the questions of counsel. Do not assume from anything I may have said that I have any opinion concerning any of the issues in this case. Except for the instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings of the facts; and I mean that sincerely.

Although an instruction such as this cannot cure all defects, *see Frantz v. United States,* 62 F.2d 737 (6th Cir.1933) (where a similar instruction was not sufficient), this instruction was sufficient in the instant case.

**B.**

■ As a general rule, testimony given by a grand jury witness suspected of wrongdoing may be used against him in a later prosecution for a substantive criminal offense. *See United States v. Washington,* 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977); *United States v. Reed,* 631 F.2d 87 (6th Cir.1980) (per curiam). This is in accord with the familiar rule of evidence that any statement by a party may be offered against him by his opponent. 2 C. Wright, *Federal Practice and Procedure* § 413 (1982). The Federal Rules of Evidence treat these statements as not within the hearsay concept. Fed.R.Evid. 801(d)(2). Therefore, unless some other rule is violated, defendant's out of court statements may be offered against him as an admission.

Appellant argues that the district court committed reversible error in permitting the reading of his grand jury testimony. Appellant is correct in arguing that the grand jury testimony could not have been admitted as a prior inconsistent statement for impeachment purposes since he had not yet taken the stand. Appellant also seems to argue, however, that the grand jury testimony could not constitute an admission since the testimony amounts to a denial of the facts the prosecution wished to prove.

Courts have defined admission to include some specific fact which tends to establish guilt or some element of the offense. *See Gladden v. Unsworth,* 396 F.2d 373, 375 n. 5 (9th Cir.1968). To the extent that it was implausible, appellant's grand jury testimony tended to establish his guilt and could properly be used against him as an admission.

For the foregoing reasons, we AFFIRM the district court's judgment of conviction.