**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0018n.06

**No. 08-4451**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| LOUIS K. DAVIS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

**FILED**
**Jan 11, 2010**
LEONARD GREEN, Clerk

Before: RYAN, COOK, and WHITE, Circuit Judges.

COOK, Circuit Judge. Louis Davis entered a conditional guilty plea to possessing a firearm while a convicted felon after the district judge refused to suppress the fruits of an automobile search. Davis appeals the ruling admitting evidence from the traffic stop, arguing that the district judge abused his discretion by impermissibly advocating for the government through his selection of witnesses and conduct at the suppression hearing. Finding no error, we affirm.

## I. BACKGROUND

Several police officers followed Davis at various distances after a suspected drug transaction. Traveling closest to Davis in an undercover car, Officer Patton observed him commit a rolling stop violation. He radioed to Officers Pantall and McLaughlin, instructing them to stop Davis for the violation. When asked for his driver's license, Davis said that he kept it in the trunk. He opened the

trunk, disclosing cash and marijuana, but no license. Pantall arrested Davis. An inventory search produced a handgun from under the front seat. Davis possessed the gun despite his status as a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

Davis moved to suppress the results of the search by challenging the validity of the stop. At a suppression hearing before a magistrate judge, Patton testified that he ordered the stop after witnessing Davis roll through the stop sign at the intersection of Home<u>stead</u> and Indianola. Pantall and McLaughlin, who actually stopped Davis, did not see the violation, but agreed the violation occurred at Home<u>stead</u> and Indianola. Davis called a witness who testified that no stop sign existed on Indianola at Home<u>stead</u>. The magistrate permitted the government to recall Patton at a second hearing. At this second hearing, Patton testified that as a result of revisiting the scene he came to realize that his earlier testimony was incorrect; the stop took place at the intersection of Indianola and Home<u>wood</u>, not Home<u>stead</u>. The magistrate's report, however, concluded that "Officer Patton's testimony is not credible." Without credible evidence of a violation, the magistrate recommended finding that the officers unlawfully stopped Davis.

As part of his review of the magistrate judge's report, the district judge conducted a third suppression hearing. He called McLaughlin and Pantall to testify and questioned them in detail regarding where the stop occurred and the position of the cars at the time Patton radioed the report. Their answers confirmed that the incident took place at the stop sign at Indianola and Home<u>wood</u>, consistent with Patton's testimony at the second hearing. After questioning McLaughlin, the district

judge invited the parties to ask questions. When the attorney for the government asked a question outside the scope of the district judge's questioning, he cut her off. The government posed no further questions. Counsel for Davis began a series of questions about the stop sign location until the district judge interrupted, stating: "Joe, that's already been covered." Davis offered nothing further. After the district judge finished with Pantall, the attorney for the government again asked follow-up questions and the judge again cut her off, saying the question was already asked. Davis's counsel then declined to ask any questions.

The district judge rejected the Magistrate Judge's Report and Recommendation on the suppression motion, finding sufficient evidence to justify the traffic stop. Davis argues that the district judge impermissibly crossed the line into advocacy by questioning the witnesses, failing to call Patton to testify at the third hearing, and limiting cross-examination. He also argues that the limits on cross-examination infringed on his Confrontation Clause rights.

## II. ANALYSIS

### A. Standard of Review

This court reviews a district judge's conduct during the course of a trial, including questioning witnesses, for abuse of discretion. *McMillan v. Castro*, 405 F.3d 405, 409 (6th Cir. 2005). We similarly review limits on the defendant's cross-examination of government witnesses. *United States v. Green*, 202 F.3d 869, 873 (6th Cir. 2000). Where counsel fails to object to the

judge's conduct, this court looks for plain error. *United States v. Powers*, 500 F.3d 500, 506 (6th Cir. 2007). We have hinted that this court might review for abuse of discretion where counsel reasonably withholds objections to avoid inciting additional hostility from the judge. *Id*. at 506 (citing *United States v. Sims*, 46 F. App'x 807, 814 (6th Cir. 2002)). Although Davis argues that his counsel faced hostility from the court, we need not decide whether potential hostility excused his failure to object because Davis's claim fails under either standard.

## B. Advocacy

Davis argues that the district judge's intervention—directly questioning witnesses—crossed the line into advocacy for the government. He cites a series of cases limiting judicial intervention during jury trials. *See*, *e.g.*, *United States v. Hickman*, 592 F.2d 931 (6th Cir. 1979). But when the questioning comes outside the presence of the jury, the same concerns do not hold. *United States v. Almeida-Perez*, 549 F.3d 1162, 1174 (8th Cir. 2008) (That "the suppression motion was tried to a Magistrate Judge, rather than to a jury, decreases the danger of prejudice to the defendants from the Magistrate Judge's questioning.") (citing *United States v. Blood*, 435 F.3d 612, 629 (6th Cir. 2006)).

Courts must avoid "the appearance of partiality which can easily arise if the judge intervenes continually on the side of one of the parties." *Hickman*, 592 F.2d at 934. The district judge here did not intervene on any party's behalf. Showing no favoritism, he asked probing questions of the officers and interrupted questions by counsel for both sides. *United States. v. Frazier*, 584 F.2d 790, 793 (6th Cir. 1978) (less danger when judicial intervention "applied to prosecution and defense

alike"). Moreover, the district judge asked questions directly because the parties' questioning failed to clear up the confusion at the prior hearings.

Frequently, "judicial intervention will operate to clear up inadvertent witness confusion." *Hickman*, 592 F.2d at 933. Two prior hearings blemished by witness confusion relating to the location of a stop sign necessitated this third hearing. The district judge asked his own questions, outside the presence of a jury, in an impartial manner to cure confusion. In doing so, the district judge neither crossed into improper advocacy nor abused his discretion.

### C. Failure to Call Additional Witnesses

Davis also contends that the district judge demonstrated his bias by failing to call the key witness, Officer Patton. The district judge, however, already possessed transcripts from two separate hearings where Patton answered questions, and thus could evaluate Patton's explanation for the Homestead/Homewood discrepancy without additional live testimony. Calling McLaughlin and Pantall, who only participated in the first hearing, allowed the district judge to evaluate the credibility of the officers and the plausibility of Patton's explanation and reflects no bias.

Davis further argues that only bias can account for the district court overturning the magistrate's credibility determination without taking additional live testimony from Patton. For support, Davis relies on a question left open in a footnote in *United States v. Raddatz*, 447 U.S. 667, 681 n.7 (1980):

The issue is not before us, but we assume it is unlikely that a district judge would *reject* a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal; to do so without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions which we do not reach.

This court answered affirmatively the question *Raddatz* left open, holding that a district judge may disregard a magistrate's credibility findings without listening to live testimony. *United States v. Saltzman*, 922 F.2d 1218, 1993 WL 100082, at *2 (6th Cir. 1993) (table). We discern no abuse of discretion nor bias in the district judge's decision that he could evaluate Patton's testimony by reading the transcripts and testing his assertions against the other officers' testimony.

## D. Limiting Cross-examination

"With respect to the curtailment of cross-examination . . . , the judge has wide discretionary control." *United States v. Slone*, 833 F.2d 595, 600 (6th Cir. 1987). Because "the extent of cross-examination is within the trial judge's sound discretion, the judge may reasonably determine when a subject is exhausted." *Id.* at 601. The district judge limited questions by both the government and Davis after exhaustive questioning from the bench and questions from both parties at a prior hearing. He interrupted counsel for both sides when the questioning became repetitive. Where "the trial judge did not deny cross-examination altogether nor . . . arbitrarily curtail cross-examination upon a proper subject, but instead merely prevented appellant from belaboring his point, the trial judge did not abuse his discretion." *Id.* at 601. Davis fails to persuade us that the court acted outside discretionary bounds or crossed into advocacy.

E. Confrontation Rights

Davis further claims that by disallowing cross-examination of McLaughlin and Pantall, Judge Economus violated his rights under the Confrontation Clause. This claim also lacks merit. The Supreme Court "has noted that the interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself." *Raddatz*, 447 U.S. at 679; *see also United States v. Burke*, 345 F.3d 416, 425 (6th Cir. 2003) (less process due at suppression hearings); *Barber v. Page*, 390 U.S. 719, 725 (1968) ("[t]he right to confrontation is basically a trial right"); *United States v. Sissler*, 966 F.2d 1455, 1992 WL 126974, at *2 (6th Cir. 1992) (table) (confrontation rights do not apply in same way at suppression hearings); *United States v. Garcia,* 324 F. App'x 705, 708–09 (10th Cir. 2009) (questioning whether Confrontation Clause applies at all).

Even assuming the Confrontation Clause applies to suppression hearings, Davis suffered no violations. Davis cross-examined McLaughlin and Pantall at the hearing before the magistrate. The district judge offered Davis the opportunity to cross-examine them again, which he declined, and he lodged no objection. As for Patton, Davis cross-examined him on two occasions. The district judge managed an orderly hearing, with only the necessary witnesses, to resolve the Homewood/Homestead inconsistency, without violating Davis's confrontation rights.

III.

Because the district court neither abused its discretion nor violated Davis's rights, we affirm its ruling to admit evidence from the traffic stop.